Mr. Justice MaoArthur
delivered an oral opinion, in substance as follows:
I concur in the decision just read, but I desire to add some views of my own arising more particularly out of the state of the pleading.
The action is founded on sections 8490 and 3491, Uevised Statutes, which provide for a civil action against all persons making false claims against the United States, and declaring that they shall forfeit and pay to the United States the sum of two .thousand dollars, and in addition double the amouut of daprage which the latter may have sustained.
It is further provided that the suit may be brought and carried on by any person as well for himself as for the United States, but at his. sole cost and charge, and section 3493 gives to the person bringing such suit one-half the amouut of the forfeiture and damages which may be recovered and collected. The acts for which this action lies are prohibited by section *229 ■ 5438, against presenting false claims for payment or approval to or by any person or officers in the civil, military, or naval service of the United States, and against any combination or conspiracy to defraud the government by obtaining the payment or allowance of any such claim.
The declaration sets forth that the defendants entered into a fraudulent agreement for the purpose of cheating and defrauding the government, and that they did conspire and combine, and did aid and assist in obtaining payment of a fraudulent and fictitious claim for the sum of $108,750, well knowing that the claim was false, fictitious, and fraudulent; that such claim purported to be founded upon a contract for mules, which is set forth, as follows:
“Oeeice Assistant Quartermaster,
“Nashville, Tenn., March 9, 1865.
“I hereby obligate myself, as an officer of the government, to receive of T. T. Taylor, agent, one thousand (1,000) good serviceable mules, that will inspect up to the required standard; said mules to be delivered in Nashville, Tenn., on or before the 20tb day of April next, at the following prices, to wit: One hundred and sixty dollars ($160), one hundred and sixty-seven dollars and fifty cents ($167.50), one hundred and seventy-five dollars ($175) each, respectively, for fourteen (14), fourteen and one-half (14-J), and fifteen (15) hand mules.
“Henry Howland,
“ Captain and A. Q. M.”
It is then averred that the contract was accepted by the defendants through T. T. Taylor, their agent, and that they falsely and fraudulently alleged that in consequence of the failure of' the United States to comply with the terms of said contract great damage had been done them, to the amount before mentioned, whereas no such injury had been in point of fact incurred.
Two pleas were interposed by the defendant Bristow: first, the general issue, and secondly, a special plea denying the combination and conspiracy, and denying generally, specially, and specifically each and every allegation of fraud in the *230 declaration, and averring that the claim was a just, bona-fide, and valid claim against the United States.
It is also alleged that the claim set out in the plaintiff's declaration was presented to the Secretary of War for payment, and was, on the recommendation of the Judge Advocate-General, referred to be adjudicated in the Court of Claims, and that such proceedings were had therein that on the 5th day of January, 1874, final judgment was rendered on said claim against the United States in favor of the claimants for the sum of $108,750, which was afterwards paid by the United States out of its treasury. The conclusions of law and the judgment of that court are set out at large in the said second plea. After stating that evidence was duly taken in said Court of Claims on behalf of the claimants, under the direction of their attorney, in support and proof of said claim, according to the practice of that court, for the purpose of proving the contract and the breach thereof by the United States, and the amount of the damages sustained by the claimant in consequence of such breach, the defendant Bristow avers as follows:
“After all the evidence in support and proof of the said claim had been taken and filed as aforesaid in the said court, and after the said case was prepared and ready for argument, he, the said defendant, being an attorney and counsellor at law, was duly employed and retained by the said claimants to argue the said case as their counsel on their behalf before the said court, when the same should come on for argument, in association with their ■ said attorney of record, T. J. D. Fuller, Esq.; and the said case coming on for argument in the said court, he, the said defendant, did, on or about the 28th day of October, 1873, in his character and capacity aforesaid, as counsel of the said, claimants, in pursuance of the employment and retainer aforesaid, argue the said case before the said court for and on behalf of the claimants, upon the facts disclosed by the record in the said ease and the law understood by him to be applicable to those facts.
“ On the same day, or on a day subsequent, in the same *231 term, the said case was also fully argued on behalf of the United States by the Assistant Attorney-General of the United States, in charge of the business of the United States in said court, and duly submitted to the court; and afterwards, to wit, on or about the 5th day of January, 1874, the opinion of the said court in favor of the said claimants was delivered by the Hon.. Charles C. Nott, one of the judges of the said court, and thereupon the said court ordered a judgment to be entered in the said case against the United States in the words and figures following, to wit:
“ ‘ The court, on due consideration of the premises, find for the claimants, and order, adjudge, and decree that the said Harrison P. Thompson, William 33. Moore, John A. Thompson, and Benjamin P. Groom, composing the firm of John A. Thompson & Co., do have and recover of and from the United States the sum of one hundred and eight thousand seven hundred and fifty dollars ($108,750).’
“The said court did thereupon, according to law, in open court, at the time of the entry of the said judgment in the said case, make and file their findings of fact and conclusions of law.”
He further avers in his said special plea as follows:
“The said judgment of the Court of Claims in said case upon the said claim was never impeached or set aside by the said court, nor did the United States, to the knowledge or belief of this defendant, so much as complain to the said court of the said judgment, or of the said findings of factor conclusions of law, or ask the said court to stay the payment of the said judgment, or attempt to obtain a new 1 rial in the said case, by reason that the said contract on which the said claim was founded and prosecuted was not a valid and legal contract between the said claimants and the Government of the United States, or that the said court had found excessive damages, or that the said judgment or any part thereof was in any particular contrary to the evidence in the said case, or contrary to the law applicable to the same; or that some fraud, wrong, or injustice in the premises had been done to *232 the United States, or that some fraud had been practiced or attempted to be practiced in the proof, statement, establishment, or allowance of the said claim, or any part thereof, against the United States; nor did the United States take an appeal in the said case from the said judgment of the Court of Claims, or any part thereof, to the Supreme Court of the United States, and the said judgment has therefore never been in whole or in part reversed or made void; and on or about the 6th day of February, 1874, the amount due by said judgment of the Court of Claims in the said case was duly paid and satisfied to the said claimants by the United States from and out of the specific appropriation which by the accounting officers of the Treasury was found and certified to be applicable to the same, as provided in the seventh section of the act of Congress approved June 25,1868.”
The replication of the plaintiff to the special plea reiterates the allegations of the declaration very much in the same language and particularity, but makes no reply to the proceedings and judgment in the Court of Claims, nor to the averments that Bristow’s first connection with the case was in' the Court of Claims as counsel, and that his duty was simply to argue the case in that capacity. For this reason the defendant Bristow has demurred to the replication.
It is an established rule in pleading that what is not denied is admitted. If, therefore, the proceedings and judgment in the Court of Claims are well pleaded, the defendant Bristow is entitled to judgment upon the demurrer. The question of jurisdiction in this court to entertain the suit is not dwelt upon, because the statute authorizing the action directs that it can be instituted in the Supreme Court of the District of Columbia. The case is properly here. The question, then, occurs as to the conclusiveness of the judgment in the Court of Claims. That court is undoubtedly one of those which -Congress has authority to establish. The Supreme Court of the United States has decided that it exercises the functions of a court of justice, and that its judgments are as final and conclusive as are those of its own when no appeal is taken *233 therefrom. (United States v. O’Grady, 22 Wall., 647.) Now, it is a general principle of law that a judgment, of a court having jurisdiction of the person and of the subject-matter is a final determination of all questions litigated in the cause, and of all questions which might be properly heard and decided upon the issue. It is clear that there is no averment in the declaration either of fraud or of conspiracy that could not have been considered and determined by way of defense in the Court of Claims against these defendants. There can be no illegal combination for the purpose of presenting an honest claim against the government. It is only when the claim is false and fraudulent that a combination to obtain its payment is against the statute. The primary fact to be established is, therefore, the turpitude of the claim itself in order to maintain this action; and the same fact would have defeated the recovery in the Court of Claims, where the judgment was pronounced. No one can fail to see that the character of the claim was a proper and legitimate subject of examination there; and, indeed, one of the main considerations of public policy which led to the establishment of that tribunal was to protect the government by means of judicial acumen from the pretenses of fraudulent claimants. The court has the most ample means- of protecting itself from every species of fraud or overreaching. By section 1086 of the Revised Statutes all attempts to practice any fraud upon the United States in the proof, statement, establishment, or allowance of any claim are punished by the absolute forfeiture of the claim to the government; and by section 1088 the court has power, at any time while any claim is pending before it, or on an appeal from it, or within two days after the final disposition of the claim, to grant a new trial and stay judgment thereon where any fraud, wrong, or injustice has been done to the United States. In this case a new trial was not asked for; no appeal has been taken, and the judgment itself has been paid. There seems to have been a thorough examination of the case in the Court of Claims. There was a dissenting opinion by the chief justice, and we know that a *234 divided court is more likely to lead to greater search and study than would otherwise perhaps be incurred. As all the matters now set up might have been considered and proved as a defense in that court, and the jurisdiction being unquestionable, the judgment must be held conclusive against the United States and all parties in privity with them.
It is argued that the relator was not a party to that judgment, and is, therefore, not to be affected by it; but the rule applies to all parties claiming under those who were parties in the cause. If my title to real estate has been decided against me by a court of competent jurisdiction, any one to whom I might afterwards convey would be equally bound by that determination. This suit must be brought in the name of the United States, who was the party, and the relator is in the same interest, and is equally concluded with the party he represents. So it is said that Bristow was not a party there and may be sued here. The answer to this is apparent from the plea itself. We have seen that Bristow pleads he was not connected with the claim until the evidence was taken in the Court of Claims; that he was then retained as counsel to argue the cause as an attorney and counsellor at law. This statement is not denied by the replication, and is therefore admitted on the record. It is an unheard-of proposition that this state of facts constitutes him a conspirator within the meaning of the penal statute referred to. It would certainly be a dangerous doctrine to suppose that a lawyer is liable to be prosecuted both civilly and criminally for appearing in a court of justice to argue a cause upon a claim which an informer might allege to be fraudulent, although it had been tried and pronounced valid by an unreversed judgment of a competent court. Such a principle would affect every retainer with insecurity and make the life of an advocate the most hazardous and precarious of all human pursuits.
Another view has been presented in favor of this action, namely, that it is founded upon a statute, and however-true the general rule may be in regard to the finality of a judg *235 ment, it cannot apply to a suit authorized by the express terms of the law.
Section 5438, already referred to, prohibits every person from presenting for payment or approval to or by any person or officer in the civil, military, or naval service of the United States any claim u'pon or against the Government of the United States, knowing such claim to be false, fictitious, or fraudulent, or from making any false voucher or receipt, or from entering into any agreement, combination, or conspiracy to defraud the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim. The object of this statute is apparent. It was to protect the government against fraudulent claims presented to its officers for settlement, and was never designed to apply to the prosecution of claims before a tribunal like the Court of Claims. It can in no sense be called a “person or officer” in the civil, military, or naval service of the United States. We have seen that it exercises the functions of a court, and that its judgments are conclusive inter partes. We deem ourselves fortunate in having a government with the three great co-ordinate branches, of which the judiciary is one, and to call it a person or an officer would be to confound the nature of our civil institutions. If Congress had determined to apply this statute to the prosecution of demands against the government in that court, they would undoubtedly have designated it by name. It was organized for the express purpose, and no other, of adjusting and deciding pecuniary demands against the United States. This law has been twice enacted since the court has been in. existence, and if they had intended to put it on the same footing with an officer, “ civil or military,” they would have said so. In the absence of any such language we cannot give this effect to the statute, and for these and similar reasons we think there should be judgment for the defendant upon the demurrer.